UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE FOSTER, | ) | Case No. 1:09CV1030 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL ASTRUE, | ) | **MEMORANDUM OPINION & ORDER** |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Electronic Case Filing (ECF) Dkt. #1. Plaintiff contends that the Administrative Law Judge (ALJ) erred by finding him capable of performing a reduced range of medium work because the ALJ incorrectly analyzed an examining psychologist's assessment and failed to submit that assessment to a medical expert in order to obtain an updated opinion. ECF Dkt. #14. For the following reasons, the undersigned REVERSES AND REMANDS the ALJ's decision.

## I.   PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI[1] on December 8, 2004, alleging disability

---

[1] Plaintiff applied for SSI on the same date according to both parties, although the Transcript of Proceedings contains no documentation relating to the SSI application and in fact indicates on the List of Exhibits that SSI Exhibits 1 through 6 are "not available for inclusion." Tr. at 1; ECF Dkt. #14 at 1 and ECF Dkt. #16 at 1. The undersigned notes that the List of Exhibits page groups documents together rather than identifying each Exhibit in the record separately. For instance, rather than referring to Plaintiff's application for DIB as an individual exhibit, the List of Exhibits groups that application in "Section E" with 33 other pages which is described as "paperwork related to the claimant for disability such as forms and

1

beginning April 24, 2004 due to "bipolar disorder, manic depressive, panic attacks, anxiety disorder." Tr. at 90-58, 88, 94. The Social Security Administration (SSA) denied Plaintiff's claims and affirmed the denials upon reconsideration. *Id*. at 31-37. Plaintiff requested a hearing before an ALJ, and at the February 22, 2008 hearing, Plaintiff testified and was represented by counsel. *Id.* at 38-40, 251. Medical Expert Dr. Jeffrey Madden and Vocational Expert Barry Brown also testified. *Id.*

On March 24, 2008, the ALJ issued a decision partially favorable to Plaintiff, finding that his major depressive disorder met Listing 12.04 of 20 C.F.R. Part 4, Subpart P, Appendix 1 (the Listings) from April 24, 2004 to March 6, 2006. Tr. at 19. The ALJ found that Plaintiff's other impairments of anxiety disorder, not otherwise specified, and degenerative changes of the lumbar spine, while severe impairments, did not meet or equal, individually or in combination, any of the Listings. *Id.*

The ALJ further found that medical improvement had occurred in Plaintiff's major depressive disorder as of March 6, 2006 and none of his severe impairments, including that disorder, met or equaled the Listings as of that date and beyond. Tr. at 20-21. He further found that as of March 6, 2006, Plaintiff had the residual functional capacity (RFC) to perform medium work consisting of simple, repetitive tasks, with no production quotas, no work with the general public, and only limited contact with co-workers and supervisors. *Id*. The ALJ found that Plaintiff could return to his past relevant work as a piece worker at Goodwill Industries with this RFC. *Id.* at 24-25.

Plaintiff requested that the Appeals Council review the ALJ's decision, but Council denied the request for review, concluding that no basis existed for changing the ALJ's decision. *Id.* at 5-9. Plaintiff filed an appeal to this Court on May 5, 2009 and Defendant answered. ECF Dkt. #s 1, 10.

---

reports completed by and for claimant, information on work background and medications. Each set of documents is labeled with the section number and numerically as an exhibit." The range for these documents is from page 73 through page 106.

The parties consented to the jurisdiction of the undersigned and filed briefs addressing the merits of the case. ECF Dkt. #s 9, 14, 16. At issue is the ALJ's March 24, 2008 decision, which stands as the final decision of the Commissioner. Tr. at 13-26; 20 C.F.R. § 404.984.

## II      STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the following required sequential steps for evaluating entitlement to DIB and SSI:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that other jobs in the economy are available to the claimant, considering his age, education, past work experience and RFC. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**III.    STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves conflicts, and makes a determination of disability.  This Court's review of such a determination is limited by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Therefore, this Court is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record to support an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *Id.*; *Walters,* 127 F.3d at 532.  Substantiality is based upon the record taken as a whole.  *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**IV.    ANALYSIS**

The Court first considers Plaintiff's second claim of ALJ error.  Plaintiff contends that the ALJ erred when he failed to obtain an updated opinion from the medical expert after the hearing so that the expert could address the findings of an examining psychologist from another agency.  ECF Dkt. #14 at 10.  The Court finds merit to this contention insofar as the ALJ relies upon the medical expert's opinion in order to find that Plaintiff's mental impairment had improved as of March 6, 2006.

At Plaintiff's hearing before the ALJ, Dr. Madden, the medical expert, opined that up until Dr. Comley's report of January 25, 2005, Plaintiff's psychological impairments established marked

-4-

impairment in social functioning and concentration, persistence and pace, which would establish that his conditions met Listing 12.04(A)(1). Tr. at 282. Dr. Madden explained that the starting point for an improvement in Plaintiff's mental impairments actually began on March 6, 2006 because treatment notes indicated improvement and this was the first time that Plaintiff's GAF scores had improved and treatment notes showed improvement. *Id*. at 285. He testified that on the basis of the objective record, Plaintiff could perform simple, repetitive tasks with no production quotas or fast-paced work, limited supervision, no contact with the public and limited contact around coworkers. *Id*. at 283-284.

During the questioning of Dr. Madden by Plaintiff's counsel, Plaintiff reported that he had undergone a recent psychological examination that had been requested by the Job and Family Services Agency in his county. Tr. at 286. The ALJ left the record open so that counsel could submit this examination after the hearing. *Id*. at 287. Counsel thereafter submitted the evaluation, which was conducted by Dr. Kenneth Karger, Ph.D. Tr. at 245-247.

Dr. Karger performed the examination on February 9, 2008 and indicated that he administered the Cognistat cognitive status examination to Plaintiff. Tr. at 245-246. Dr. Karger reported that Plaintiff experienced visual memory impairment on the Cognistat and was initially guarded, tense, and irritable, although he relaxed as the evaluation progressed. *Id.* at 246. On the mental RFC assessment, Dr. Karger concluded that Plaintiff was markedly limited in his abilities to: work in coordination or proximity with others without being distracted by them; complete a normal workday or workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable amount of rest periods; interact appropriately with the general public; accept instruction and respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id*. at 245. Dr. Karger found that Plaintiff was unemployable for twelve months or more due to his mental

impairments. *Id*.

In explaining his conclusions as to Plaintiff's areas of marked limitation, Dr. Karger indicated that Plaintiff presented with a paranoid quality and he reported and demonstrated "interpersonal discomfort" which "would hamper his relationships with coworkers, supervisors, and the general public." Tr. at 246. Dr. Karger also indicated that Plaintiff exhibited significantly below average judgment on the Cognistat. *Id.* He described Plaintiff's mood as dysphoric and a combination of irritability and anxiety with underlying sadness. *Id*. Dr. Karger diagnosed Plaintiff with bipolar disorder, most recent episode depressed, personality disorder not otherwise specified, obsessive-compulsive, avoidant and paranoid personality features. *Id*. at 247. He indicated Plaintiff's GAF as 44, which indicates severe symptoms. *Id.*

Plaintiff asserts that the ALJ should have submitted Dr. Karger's report to Dr. Madden and requested that Dr. Madden review the report and submit an updated report as to Plaintiff's medical improvement in response to Dr. Karger's report. ECF Dkt. #14 at 10. This Court agrees.

Here, in finding that Plaintiff's mental impairment had improved as of March 6, 2006, the ALJ specifically stated that "[t]he medical expert's testimony that the evidence shows the claimant's impairments improved as of March 6, 2006, is also well supported." Tr. at 20. The ALJ's finding is erroneous because Dr. Madden testified that he would disregard treatment notes that he believed showed improvement in Plaintiff's condition if another MMPI were conducted. Dr. Madden had testified that Dr. Comley's MMPI findings were valid and showed that "at least up until the last note past Comaly [Comley], that is, 3-6-06, that, you know, severe levels of depression are objectively evident." *Id*. at 281. He then raised the issue of additional testing:

> After that it does, you know, the, the idea of having another set of testing, another MMPI, the possibility is that it would confirm the, the, the unsophisticated type of

-6-

> treatment that he's received recently.

*Id.* He further went on to explain that:

> So, so I think the evidence is solid at the point of Dr. Comaly's [Comley] evaluation that this is a gentleman with severe depression and I, and I think that Dr. Comaly's [Comley] GAF score at that point is, is consistent with the evidence. Again, it is clear that there is, was a change. I'm, I'm not sure if it's the loss of the job that triggered this but clearly at that level and for the period preceding that he, he would appear to be at listing level. But I, I guess you can't objectively, I cannot go beyond that in terms of validating but I certainly would not - - being the records are not as good, the psychiatrist seems to be very witty.

*Id.* The ALJ then asked Dr. Madden whether Plaintiff's impairments would meet or equal a listing after January 25, 2005:

> Q: After January 25, 2005 I take it the evidence would suggest met those people that [INAUDIBLE]?
>
> A: No, Your Honor, it wouldn't. It would certainly, again, his own testimony and again you did your questioning okay so he has there panic attacks infrequently.
>
> Q: All right. So that would suggest an improvement?
>
> A: Obviously what he described in the terms of the social functioning would seem pretty severe. But it's not clear whether, whether he was even asked about that when he was in mental health treatment so that, that's, that's, you know, I mean, he's got, as, as, as counsel has pointed out, he's got a GAF of 80, which, I don't know, Your Honor. That's, that's, that's, that's 9-7-06 he's got a GAF of 80. I'm not sure unless he went in in a manic episode. And again, Your Honor, I, I would say again that the, the therapy is not really skilled in terms of trying to objectively assess the symptoms of the diagnosis that they've given which is bipolar in the variability of mood.

*Id.* at 283.

From his testimony, Dr. Madden appears to suggest that the medical evidence after January 25, 2005 is insufficient in order for him to determine whether Plaintiff's mental health impairments met or equaled a listing or whether his conditions had improved. He proposed a mental RFC when asked by the ALJ, but then discounted the objective evidence upon which he relied for his assessment

and opinion, the GAF of 80 assessed of Plaintiff on September 7, 2006 and the treatment records from Plaintiff's therapy. He noted that the GAF of 80 could have been as a result of Plaintiff experiencing a manic episode from his bipolar disorder and he indicated that the therapy Plaintiff was receiving was not skilled in objectively assessing Plaintiff's symptoms.

And when Plaintiff's counsel asked about whether additional testing was necessary, Dr. Madden indicated that it was not necessary but may change his findings and opinion if it were present:

> Q: Is it your position, Dr. Madden, that whether an MMPI needs to be done again, is that what I gleaned from your earlier testimony?
>
> A: What, what, what, no. When, when the Judge asked me, I mean, I, I would be prepared if, if the MMPI was the one like Dr. Comaly [Comley]. If I, if I had that I, I would be prepared to ignore the treatment records.

Tr. at 281, 285-286. He further acknowledged that subsequent testing would be helpful in this particular case:

> Again, no, no psychological test is an x-ray but you have an individual who on personality testing, his personality testing is very consistent of the presentation so that that would be helpful to the extent that his current treatment doesn't adequately capture his, his level of impairment.

*Id.* at 286. Since further testing was in fact performed by way of a clinical examination and psychological testing, although not in the form of a MMPI, the Court cannot have confidence that Dr. Madden's ultimate opinion regarding whether Plaintiff's mental health impairments met or equaled the Listings after March 6, 2006 would remain the same. Therefore, substantial evidence does not support the ALJ's reliance upon Dr. Madden's opinions.

Even if the ALJ could have relied upon Dr. Madden's opinions from a procedural standpoint, the Court questions how much weight he should have afforded it. Dr. Madden wavered significantly in his testimony, as explained *supra.* Notably, he stated that no further testing was necessary, but

-8-

acknowledged that the objective evidence upon which he relied, the GAF score of 80, and the treatment records, had deficiencies. Again, he testified that the GAF of 80 could have resulted from a manic episode and not an actual improvement in Plaintiff's impairments. Tr. at 283. He also indicated that Plaintiff's current therapy did not adequately capture, treat or record the level of his impairments or their resulting symptoms. *Id.* at 285-286.

Accordingly, the ALJ's reliance upon the medical expert's findings and opinions was erroneous. Moreover, the Court finds that this error requires remand. While agency decisions must be sustained, if at all, on their own reasoning, ... this principle "does not mechanically compel reversal 'when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of [the] decision reached.' " Where a subsidiary finding is unfounded, the court will remand the case to the agency for further consideration only if "the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...." *Berryhill v. Shalala*, No. 92-5876, 1993 WL 361792 at *7 (6th Cir. 1993).

Here, the ALJ erroneously relied upon the medical expert's opinion in order to find that Plaintiff's mental impairments had improved as of March 6, 2006. Since the ALJ relied upon Dr. Madden's inconsistent and wavering testimony, the Court cannot say it has no substantial doubt that the ALJ will reach the same conclusions regarding Plaintiff's improvement once the erroneous findings regarding the medical expert are removed. Accordingly, the Court REMANDS the instant case so that the ALJ can either submit Dr. Karger's evaluation and opinion to the medical expert for an updated opinion or the ALJ can further articulate his findings as to whether Plaintiff's mental impairments had improved as of March 6, 2006 without reliance upon the medical expert's testimony.

**V.** **CONCLUSION**

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS the case consistent with this Opinion.


DATE:  July 23, 2010                          */s/George J. Limbert*
                                              GEORGE J. LIMBERT
                                              UNITED STATES MAGISTRATE JUDGE